**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3093-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RASHID WALKER,

    Defendant-Appellant.

_____

Submitted May 12, 2026 – Decided August 11, 2026

Before Judges Gooden Brown and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 02-06-0824.

Justin C. Bonus, Attorney at Law LLC, attorney for appellant.

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Ali Y. Ozbek, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

    Defendant Rashid Walker appeals from the May 8, 2024 Law Division

order[1] denying without an evidentiary hearing his petition for post-conviction relief (PCR) and motion for a new trial based on newly-discovered evidence. This is defendant's third PCR petition related to his 2004 murder conviction. We affirm.

I.

Defendant was charged in a Passaic County indictment with murder, felony murder, armed robbery, receiving stolen property, and weapons- and drug-related offenses. The principal counts—murder, felony murder, armed robbery, and possession of a handgun for an unlawful purpose—related to a shooting that occurred on February 18, 2002. The remaining offenses occurred on February 28, 2002, and resulted from subsequent searches of two apartments in the course of the murder investigation. Defendant's cousin, James Walker, was also charged with the murder, and defendant's girlfriend, Shahqueena Wilson, was charged with unlawful possession of a weapon.

Following two jury trials, defendant was ultimately convicted of the murder-related charges.[2] The second trial was necessitated by the jury's inability

---

[1] A June 12, 2024 order corrected the indictment number in the May 8 order.

[2] The drug charges, which had been severed, ultimately resulted in a negotiated guilty plea after the second trial.

A-3093-23

to reach a verdict on the principal counts at the first trial and returning guilty verdicts only on the receiving stolen property and weapons-related offenses. Prior to defendant's first trial, James[3] and Shahqueena entered guilty pleas.

We affirmed defendant's convictions but remanded for resentencing, which ultimately resulted in an aggregate sixty-year term of imprisonment with an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. State v. Walker (Walker I), Nos. A-5769-03, A-5952-04 (App. Div. May 9, 2008). The Supreme Court denied certification, State v. Walker, 196 N.J. 466 (2008), and we later upheld the resentencing, State v. Walker (Walker II), No. A-0788-08 (App. Div. Mar. 11, 2010).

Defendant's first PCR petition was denied following an evidentiary hearing, and we affirmed the denial. State v. Walker (Walker III), No. A-2563-12 (App. Div. June 23, 2015). The Supreme Court denied certification. State v. Walker, 224 N.J. 246 (2016). Defendant's second PCR petition was also denied, and we affirmed the denial. State v. Walker (Walker IV), No. A-3480-17 (App. Div. Apr. 11, 2019). The Supreme Court also denied certification. State v. Walker, 240 N.J. 251 (2019). Defendant's motion for reconsideration

---

[3] We use first names to avoid confusion caused by the common surnames.

A-3093-23

of the denial of his motion to correct an illegal sentence was later denied, which denial was affirmed on appeal. State v. Walker (Walker V), No. A-2783-19 (App. Div. Mar. 31, 2023). The Supreme Court denied certification. State v. Walker, 254 N.J. 177 (2023).

The facts established in defendant's two trials have been recounted at length in our prior opinions. We highlight the relevant facts for context.

> On February 18, 2002, at approximately 10:50 p.m., Javid Patel, a laundromat owner carrying a large amount of money, was fatally shot five times by two .45 caliber handguns while sitting in his car. After the shooting, defendant and his cousin, co-defendant James . . . , ran to the apartment of their friend, Sahim Lee. They arrived out of breath, nervous, and upset, and defendant told the occupants not to ask questions about what they had done.[4] At James's request, Lee agreed to store the two .45 caliber handguns belonging to defendant and James. Defendant and James then changed their jackets.
>
> On February 27, 2002, police recovered the two .45 caliber handguns from Lee's closet. Two additional guns were found in the home of the mother of defendant's girlfriend, Shahqueena . . . . Several persons linked defendant to those guns and to one of the .45

---

[4] The apartment, located at 77 Henry Street in Passaic, was also occupied by Anjelicia Jackson, Lakina Dickerson, and Sabrina Dickerson. Walker I, slip op. at 11. Anjelicia, "who lived on the first floor," testified she saw defendant and James "run up the stairs, 'bang the door open' and ask where Lee was." Ibid. Lakina, the tenant of 77 Henry Street, and her sister, Sabrina, also testified and confirmed that defendant and James arrived at the apartment together on the night in question. Id. at 21-22.

caliber handguns.[5]    Defendant and James were subsequently arrested.

Defendant admitted to police the guns in the Wilson home were his, but claimed that James had done the shooting, and that he had not seen James until around midnight.  However, defendant wrote a letter telling [Shahqueena] to perjure herself and testify to a false alibi for defendant.

James, in his statement to police, asserted that he and Dayron Johnson shot Patel in an attempt to rob him, and that James fled alone to Lee's apartment.  James additionally asserted he saw defendant for the first time that night when defendant arrived twenty minutes later.

. . . .

The trial court severed the trials so James could testify on defendant's behalf.  James subsequently pled guilty.  Nonetheless, during defendant's first trial in 2003, defendant's attorney did not call James to testify. The prosecutor read into evidence James's statement to the police.  The prosecutor argued James's statement supported the State's case against defendant because James admitted Patel was shot in an attempted robbery, even though James also claimed the other shooter was Johnson.  Defendant testified he had nothing to do with Patel's shooting.

. . . .

---

5  For example, Alejandro Valentin testified at both trials that on February 15, 2002, he saw defendant with handguns and "identified the handguns recovered from the searches . . . as the ones he saw." Walker I, slip op. at 15.  In the first trial, Shannon Byrd, a friend of defendant, testified that early in 2002, "he observed defendant purchase two handguns." Id. at 15-16.

5

In 2004, defendant was retried on the remaining counts where he was represented by a different attorney (trial counsel). Defendant did not testify at the second trial. When the State sought again to introduce James's statement, trial counsel convinced the court to exclude it based on the United States Supreme Court's recent decision in Crawford v. Washington, 541 U.S. 36 (2004). The State then attempted to call James as a witness. However, James refused to testify, despite the Attorney General's grant of full immunity, the prosecutor's threat of prosecution for obstruction and contempt, and the trial court's order holding him in contempt and imprisoning him for six months.

[Walker III, slip op. at 1-4.]

In his direct appeal, we rejected defendant's contention "he was denied his Sixth Amendment right to compulsory process at the second trial as a result of the trial court's refusal to permit him to introduce James'[s] statement to the police." Walker I, slip op. at 38. We noted it was trial counsel who sought to exclude James's statement as "part of the defense's trial strategy." Id. at 42. We observed:

> [D]efendant's argument that James'[s] statement, which could be considered to be against his penal interest and exculpatory of defendant (and not subject to Crawford if offered by the defendant), should have been admitted into evidence, is of concern. Our affirmance is without prejudice to an application for [PCR], based on the strategy used, or motion for new trial based on newly[-]discovered evidence based upon the availability of James . . . because his conviction was affirmed, and his matter became final, after the second trial.

6

[Walker I, slip op. at 43.]

In his first PCR petition, defendant followed our cue and challenged trial counsel's failure to offer James's statement into evidence or call him as an exculpatory witness at the second trial. Walker III, slip op. at 5-6. In affirming the trial court's denial of PCR, we recounted notable findings from the evidentiary hearing during which trial counsel and James testified. Significantly, trial counsel explained "she chose not to utilize James or his statement because he provided a detailed account of the robbery, which would defeat trial counsel's strategy to move to dismiss the robbery count, and the dependent felony murder count, for lack of evidence." Id. at 9. "Trial counsel also testified that she interviewed James and found that he 'was not likeable,' and that his statement 'was ridiculous on so many things that were easily disprovable by the [S]tate.'" Ibid. (alteration in original).

"In addition, the trial court and PCR court observed James under questioning and found he likely would not have fared well under cross-examination and would have harmed defendant's case." Id. at 9-10. Moreover, "James testified at the PCR hearing that 'under no circumstances [would he have] answer[ed] any questions'" at trial. "He refused to testify even when given immunity, and when he was held in contempt because he had his own appeal

A-3093-23

pending." Id. at 10 (alterations in original).

We concluded "trial counsel was not ineffective in her strategic decision not to call James or allow the State to introduce his statement." Ibid. We also concluded defendant's "motion for a new trial on the basis of newly-discovered evidence, namely James's proposed testimony," was properly denied because "James's proposed testimony essentially repeated his pretrial statement to police, and thus his exculpatory information was not discovered after trial or undiscoverable beforehand." Id. at 11.

Further,

> defendant's trial had been severed to allow James to testify, and James had been immunized to remove any risk of self-incrimination and to make James available to testify. Thus, we question[ed] whether James's testimony is properly regarded as newly-discovered, particularly as the trial court found that, in refusing to testify, James was acting in concert with defendant.
>
> [Id. at 11-12 (citation omitted).]

We added "defendant failed to show James's testimony probably would have changed the jury's verdict." Id. at 12. Analogizing the case to State v. Robinson, 253 N.J. Super. 346 (App. Div. 1992), we stated

> James "as a sentenced [exculpatory witness], had nothing to lose by exonerating [defendant] and his testimony is therefore inherently suspect." Id. at 367 (internal quotation marks omitted). As in Robinson,

James's "story was clearly manufactured and did not have the minimum ring of truth sufficient to have the credibility issue presented to the jury." Ibid. Accordingly, "we cannot conclude that the trial judge erred in denying the motion for a new trial." Ibid. (upholding the rejection of a newly-discovered evidence motion based on a co-defendant's proposed testimony that the defendant was not involved in the robbery).

[Walker III, slip op. at 11.]

In his second PCR petition, defendant again sought a new trial based on newly-discovered evidence. Walker IV, slip op. at 7-9. In support, defendant relied on James's April 29, 2010 certification attesting he would testify consistent with his pre-trial statement to police exonerating defendant; Johnson's August 1, 2006 guilty plea to Patel's robbery; and Dwight Jackson's January 17, 2017 certification. Ibid. By way of background, Dwight "had given a videotaped statement to the police, inculpating defendant." Id. at 4. "Upon receiving the statement, trial counsel requested disclosure of any cooperation agreement with [Dwight] and asserted a Brady[6] violation. In addition, during the second trial, defendant successfully objected, and the court excluded [Dwight's] testimony on hearsay grounds." Id. at 13.

---

[6] Brady v. Maryland, 373 U.S. 83 (1963).

A-3093-23

In his second PCR petition, defendant reprised his Brady violation claim by submitting Dwight's January 17, 2017 certification "wherein [Dwight] stated he had a cooperation agreement with the prosecutor with respect to a drug offense" and "told the prosecutor in November 2003 and July 2004 that Johnson [had] told him James and Johnson shot the victim." Id. at 7-8. "[N]onetheless[,] [Dwight] agreed to give a videotaped statement inculpating defendant and testify at trial in exchange for a sentence of probation on his drug charge." Id. at 8.

We concluded "the purported exculpatory evidence was not newly[-]discovered evidence." Id. at 12. We explained "[d]efendant knew about [Dwight] and his videotaped statement in 2004, before the second trial." Id. at 13. "Thus, the factual predicate for the relief sought relating to [Dwight] could have been discovered earlier through the exercise of reasonable diligence, and defendant's inclusion of this claim in a second PCR petition was untimely under Rule 3:22-12(a)(2)[] and procedurally barred under Rule 3:22-4(b)." Ibid.

We added:

> In any event, defendant cannot show this evidence would probably alter the outcome of the verdict in a new trial. [Dwight] did not certify that he witnessed the shooting, or saw or spoke to the shooter. Rather, his exculpatory information was based on what Johnson allegedly told him about the shooting and who shot the victim. Thus, [Dwight's] testimony would have been excluded at a new trial on hearsay grounds.

10

[Id. at 13-14.]

Likewise, as to Johnson, we stated:

Defendant also knew about Johnson since the first trial. At the first trial, the prosecutor read into evidence James'[s] statement to the police, wherein James stated that he and Johnson shot the victim in an attempt to rob him. On August 1, 2006, Johnson pled guilty to robbing the victim, and defendant could have discovered his guilty plea at that time with reasonable diligence. Thus, the factual predicate for the relief sought relating to Johnson could have been discovered earlier through the exercise of reasonable diligence, and defendant's inclusion of this claim in a second PCR petition is untimely under Rule 3:22-12(a)(2)[] and procedurally barred under Rule 3:22-4(b). In addition, defendant does not explain how Johnson's guilty plea would have probably changed the jury's verdict if a new trial were granted.

[Id. at 14.]

Lastly, as to James, we reasoned:

[T]he record does not support defendant's argument that James'[s] availability to testify was newly[-]discovered evidence. To the contrary, the record confirms that James was unavailable to testify, as he refused to testify even with the grant of immunity. Further, we found that James'[s] exculpatory information was not discovered after trial and was not undiscoverable beforehand, and defendant failed to show James'[s] testimony probably would have changed the jury's verdict. [Walker III, slip op. at 4]. Thus, defendant's inclusion of this claim in a second PCR petition is untimely under Rule 3:22-12(a)(2)[] and procedurally barred under Rule 3:22-4(b).

11

[Walker IV, slip op. at 14-15.]

In his third PCR petition that is the subject of this appeal, defendant again argued that newly-discovered evidence entitled him to a new trial, and alleged ineffective assistance of counsel (IAC) by trial counsel failing to introduce evidence and call witnesses, and appellate counsel failing to challenge on appeal the admission of irrelevant and prejudicial evidence. Defendant also asserted prosecutorial misconduct and claimed he was entitled to a missing witness charge based on the State's failure to call Johnson as a witness.

Defendant's newly-discovered evidence claims generally fall into three categories: (1) a third-party guilt defense based on admissions and hearsay statements inculpating Johnson as the second shooter and exonerating defendant; (2) an alibi defense based on Ja'kish Henry's certification that defendant was with him, not James, on the night of the murder; and (3) recantation certifications by Lakina and Sabrina Dickerson who lived at 77 Henry Street with Lee.

Without an evidentiary hearing, the PCR judge denied defendant's petition and denied defendant's motion for a new trial based on newly-discovered evidence in a May 8, 2024 order and written decision. The judge analyzed the

12

governing law and concluded defendant failed to meet the requisite standards.

This appeal followed.

On appeal, defendant raises the following points for our consideration:

> POINT I
>
> THE HEARING COURT ERRED WHEN IT DENIED [DEFENDANT'S] PCR AND MOTION FOR NEW TRIAL WITHOUT A HEARING.
>
> POINT II
>
> [DEFENDANT] PUT FORTH EVIDENCE THAT PROVES HE DID NOT MURDER . . . PATEL. HIS CONTINUED INCARCERATION VIOLATES THE 8TH AMENDMENT OF THE UNITED STATES CONSTITUTION. MINIMALLY, [DEFENDANT] HAS PRESENTED PRIMA FACIE EVIDENCE OF INNOCENCE THAT ONLY A HEARING CAN ADDRESS. THE LOWER COURT'S SUMMARY DENIAL OF [DEFENDANT'S] MOTION WAS AN ERROR.
>
> POINT III
>
> NEWLY[-]DISCOVERED EVIDENCE WOULD HAVE PROBABLY CHANGED THE VERDICT AND REQUIRES A NEW TRIAL. ALTERNATIVELY, A HEARING SHOULD BE HELD. THE COURT'S SUMMARY DENIAL OF THIS ISSUE WAS AN ERROR.
>
> POINT IV
>
> DEFENSE COUNSEL RENDERED [IAC] WHEN SHE FAILED TO INVESTIGATE AND CALL

A-3093-23

[DEFENDANT'S] ALIBI WITNESS, FAILED TO CALL SHANNON BYRD AND/OR SUBMIT JAMES['S] . . . CONFESSION INTO EVIDENCE. THE LOWER COURT'S SUMMARY DENIAL OF THIS CLAIM WAS IN ERROR.

POINT V

APPELLATE COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO ARGUE THAT THE COURT ALLOWED IRRELEVANT AND HIGHLY PREJUDICIAL EVIDENCE, TO WIT, THE .22 AND .38 CALIBER HANDGUNS, AND THE DRUGS FOUND AT DEBRA WILSON'S HOUSE, TO BE PRESENTED TO THE JURY. THE LOWER COURT'S SUMMARY DENIAL OF THIS CLAIM WAS AN ERROR.

POINT VI

THE TESTIMONY OF LAKINA . . . AND SABRINA . . . WAS FALSE AND THE PROSECUTOR MISREPRESENTED BOTH . . . JOHNSON'S ROLE IN THE MURDER OF . . . PATEL AND MISREPRESENTED THE NATURE OF THE COMMUNICATIONS BETWEEN [DEFENDANT] AND SHA[H]QUEENA . . . . AS SUCH, A FRAUD WAS PRESENTED UPON THE COURT. THE COURT'S SUMMARY RULING IS MISPLACED.

POINT VII

[DEFENDANT] WAS ENTITLED TO A MISSING WITNESS CHARGE.

14

POINT VIII

THE COMBINED EFFECT OF NEWLY[-]DISCOVERED EVIDENCE, FRAUD UPON THE COURT, AND INEFFECTIVE ASSISTANCE REQUIRES A NEW TRIAL.

II.

A. Motion for New Trial Based on Newly-Discovered Evidence

The standard of review is the same for a motion for a new trial based on newly-discovered evidence as for PCR. See State v. Carter, 85 N.J. 300, 314 (1981) (finding that an evidentiary hearing was required for the defendant's motion for a new trial based on newly-discovered evidence when material facts lay outside the record); State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) ("[W]e review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing."); State v. Reevey, 417 N.J. Super. 134, 146-47 (App. Div. 2010) (explaining "where no evidentiary hearing has been held, we 'may exercise de novo review over the factual inferences drawn from the documentary record by the [PCR judge]'" and "conduct a de novo review of both the factual findings and legal conclusions of the PCR court" (alteration in original) (quoting State v. Harris, 181 N.J. 391, 421 (2004))). Such motions are "addressed to the sound discretion of the trial court, and its determination will not be reversed on appeal unless there has been

a clear abuse of that discretion." State v. Puchalski, 45 N.J. 97, 107 (1965) (quoting State v. Artis, 36 N.J. 538, 541 (1962)); see also State v. Russo, 333 N.J. Super. 119, 137 (App. Div. 2000) (same).

"A motion for a new trial based on the ground of newly-discovered evidence may be made at any time . . . ." R. 3:20-2. In Carter, 85 N.J. at 314, our Supreme Court elaborated on the three-prong test for granting a new trial based on newly-discovered evidence. Under that test,

> [e]vidence is newly[-]discovered and sufficient to warrant the grant of a new trial when it is "(1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted."
>
> [State v. Nash, 212 N.J. 518, 549 (2013) (quoting Carter, 85 N.J. at 314).]

Under prong one, a defendant must show the evidence "ha[s] some bearing on the claims being advanced" and includes evidence that supports a general denial of guilt. State v. Ways, 180 N.J. 171, 188 (2004) (quoting State v. Henries, 306 N.J. Super. 512, 531 (App. Div. 1997)). This requires the court to engage in "an evaluation of the probable impact such evidence would have on a jury verdict." Id. at 188-89. "[E]vidence that would have the probable effect of

16

raising a reasonable doubt as to the defendant's guilt would not be considered merely cumulative, impeaching, or contradictory." Id. at 189.

Under prong two, "the new evidence must have been discovered after completion of trial and must not have been discoverable earlier through the exercise of reasonable diligence." Id. at 192. To be sure, a defendant must "act with reasonable dispatch in searching for evidence before the start of the trial." Ibid. Under prong three, evidence that "would shake the very foundation of the State's case and almost certainly alter the earlier jury verdict" would clearly qualify. Id. at 189. "[T]he test is whether the evidence if introduced is such as ought to have led the jury to a different conclusion—one of probability and not mere possibility . . . ." State v. Haines, 20 N.J. 438, 445 (1956).

"[A]ll three prongs of th[e] test must be satisfied before a defendant will gain the relief of a new trial." Ways, 180 N.J. at 187; accord Carter, 85 N.J. at 314. Further, it is the defendant's "burden to establish each prong is met." State v. Fortin, 464 N.J. Super. 193, 216 (App. Div. 2020) (quoting State v. Smith, 29 N.J. 561, 573 (1959)). While we acknowledge that the purpose of post-conviction review based on newly-discovered evidence "is to provide a safeguard in the system for those who are unjustly convicted of a crime," we are mindful that "[n]ewly[-]discovered evidence must be reviewed with a certain

17

degree of circumspection to ensure that it is not the product of fabrication, and, if credible and material, is of sufficient weight that it would probably alter the outcome of the verdict in a new trial." Ways, 180 N.J. at 187-88.

To that end, motions for a new trial based on newly-discovered evidence "should be granted with caution by a trial court since [they] disrupt[] the judicial process." State v. Conway, 193 N.J. Super. 133, 171 (App. Div. 1984) (citing Haines, 20 N.J. at 443). That said, a "reviewing court must engage in a thorough, fact-sensitive analysis to determine whether the newly[-]discovered evidence would probably make a difference to the jury." Ways, 180 N.J. at 191. "The power of the newly[-]discovered evidence to alter the verdict is the central issue, not the label to be placed on that evidence." Id. at 191-92.

In particular, when considering recantation testimony in the context of a newly-discovered evidence motion, "the burden of proof rests on those presenting such testimony to establish that it is probably true and the trial testimony probably false." State v. Carter, 69 N.J. 420, 427 (1976). Generally, courts "regard recantation testimony as suspect and untrustworthy." Ibid.

> The test for the judge in evaluating a recantation upon a motion for a new trial is whether it casts serious doubt upon the truth of the testimony given at the trial and whether, if believable, the factual recital of the recantation so seriously impugns the entire trial evidence as to give rise to the conclusion that there

resulted a possible miscarriage of justice. [The judge's] first duty is, therefore, to determine whether the recanting statement is believable.

[Puchalski, 45 N.J. at 107-08.]

Applying these principles, we are satisfied the judge correctly denied defendant's motion for a new trial based on newly-discovered evidence without a hearing. To support his claim, defendant points to the following materials submitted to the judge with his motion:

> 1. . . . Johnson's videotaped admission that [defendant] is innocent, and Johnson's request for immunity. . . .
>
> 2. Wakeem Kennedy's certification authenticating the videotaped confession by Johnson and swearing to the fact that Johnson admitted to him that [defendant] was not responsible for the death of . . . Patel. . . .
>
> 3. James['s statements] . . . .
>
> 4. . . . Johnson's guilty plea . . . to the robbery of . . . Patel in 2006, almost [two] years after [defendant's second] trial. . . .
>
> 5. The prosecutor's misrepresentations of the communications between [defendant] and Sha[h]queena . . . . [by] consistently fail[ing] to let the jury know that it was [defendant] that told Sha[h]queena to come forward to tell the truth. . . .
>
> 6. Shareef Alston's certifications detailing that Johnson admitted to the murder that [defendant] is in prison for. . . .

7. Dwight['s] . . . 2017 sworn . . . statement, . . . detail[ing] that he told the prosecutor that . . . Johnson admitted to killing . . . Patel with James only. . . .

8. Daniel Witt, Arthur Manuel, Henry Rhodes . . . detail[ing] that Johnson admitted to the murder that [defendant] is in prison for. . . .

9. On October 9, 2021, . . . Henry provided an alibi for [defendant]. . . .

10. Sabrina . . . and Lakina . . . recanted and admitted that they lied at trial. . . .

11. . . . Byrd . . . testified in the first trial that [defendant] never possessed a .45 caliber gun in front of Alejandro Valentin[,] . . . corroborat[ing] Sha[h]queena['s] . . . testimony[,] . . . [but] Byrd was not called by defense counsel in the second trial.

Defendant argues he is entitled to a hearing because, aside from James's statement exonerating him, "[n]one of the other evidence presented in []his motion has been heard on the merits." Defendant further asserts Johnson's admissions, along with "recantations by two of the four witnesses that testified against [defendant] coupled with alibi and other exculpatory evidence is . . . clear and convincing evidence of innocence," and "[n]o credible evidence remains to support [defendant's] conviction."

Defendant claims he has satisfied Carter's first prong because all the evidence he presented is material and would support a third-party guilt defense

20

that relates "directly to the focal issue of the trial." Citing State v. Williams, 169 N.J. 349, 362 (2001),[7] defendant further asserts he has satisfied Carter's third prong because Johnson's videotaped confession and admissions to Kennedy, Rhodes, Dwight, Alston, Witt, and Manuel "'could have influenced the jury,' because of the significant indicia of reliability in such statements." Regarding Carter's second prong, defendant argues he was "left to litigate until very recently either as a [self-represented] litigant" or with the assistance of "assigned counsel," and the "sheer volume" of the evidence presented entitles him to a hearing or a new trial.

In addressing defendant's motion, the judge applied the Carter prongs and concluded the alleged newly-discovered evidence failed to satisfy its requirements. The judge considered defendant's submission of Johnson's unsworn videotaped admission, allegedly recorded by Kennedy on September 28, 2023, stating defendant was innocent of the charges and that Johnson would

---

[7] In Williams, 169 N.J. at 351, the defendant was charged with shooting two children. The defendant testified that another person, who was deceased by the time of trial, was to blame. Id. at 354-55. We affirmed the trial court's refusal to allow a third person's testimony that the decedent told him that he had "shot a kid" on the ground that the hearsay statement did not qualify as a declaration against interest under N.J.R.E. 803(c)(25). Williams, 169 N.J. at 360. Our Supreme Court reversed, holding the failure to admit the statement was not harmless error because the statement "could have influenced the jury." Id. at 362-63. The Court did not refer to Ways or Carter.

testify to that if granted immunity. Defendant also submitted Kennedy's certification "authenticating the videotaped confession and swearing to the fact that [Johnson] admitted to him" that defendant was not responsible for the shooting. Additionally, the judge reviewed the certifications of Alston, Dwight, Rhodes, Witt, and Manuel, each "premised" on the fact "[t]hat Johnson told them, at some point and in some form, that he was the actual shooter and that defendant was innocent."

In rejecting the submissions, the judge juxtaposed the exculpatory assertions against Johnson's prior statements, explaining:

> In fact, Johnson has continuously denied that he was the shooter in this homicide and was simply the driver of the "getaway vehicle[,"] while it was defendant and James . . . who committed the actual shooting. During his plea allocution, Johnson provides a very detailed recounting of the events of February 18, 2002. Johnson specifically stated that he was the driver of the vehicle, with defendant and James . . . as passengers, when they decided that they would rob someone. Johnson goes on to state that he remained in the car while defendant and James . . . approached the victim's car, with James . . . on the passenger side, and defendant on the street near the driver's window. Johnson, lastly, stated that when he heard the shots being fired, he took off, leaving defendant and James . . . behind. He further stated that he did, in fact, speak with Dwight . . . and reiterated that he told [Dwight] that he believed defendant and James . . . had shot someone. Additionally, when Johnson was interviewed by the Attorney General Conviction Review Unit

22

(CRU), on October 11, 2022, the statement he provided, as noted by CRU, remained consistent with his factual basis that he provided at his plea allocution.[8]

The judge thus concluded that since "Johnson's own words contradict those of the affiants' hearsay statements," the submissions "lack[ed] merit, as they fail[ed] to show how they would change the outcome of the verdict at a new trial." Stated differently, the judge implicitly found Johnson's purported exoneration of defendant unbelievable notwithstanding the submission of supporting third-party certifications.[9]

The judge's decision is supported by the record. We have acknowledged that "post-judgment exculpatory statements to third parties" that are "confirmed by affidavit" should be "tested for credibility" and should not be "summarily rejected." State v. Allen, 398 N.J. Super. 247, 258 (App. Div. 2008). However, we have also recognized "that post[-]conviction statements of persons who did not testify at trial . . . are 'inherently suspect.'" Ibid. (quoting Robinson, 253

---

[8] CRU conducted a review of defendant's convictions, and, in a January 20, 2023 letter to the Passaic County Prosecutor, advised it would "not be taking action to set aside or alter" defendant's convictions.

[9] The judge also determined the merits of Dwight's claim was previously addressed in defendant's second PCR petition, and the remaining third-party certifications were similar to Dwight's in that they were "based on what Johnson allegedly told them about the shooting" and therefore inadmissible "at a new trial on hearsay grounds."

N.J. Super. at 367). Under the circumstances of this case, the latter holds true. See Robinson, 253 N.J. Super. at 366-67 ("[A] mere exculpatory statement of a co-defendant cannot by itself give rise to a new trial if that statement is clearly false or merely designed to give an accomplice a second chance for acquittal.").

Defendant also argues a letter addressed to Johnson's attorney from the Passaic County Prosecutor's Office (PCPO) presenting him with a revised plea offer after defendant's second trial concluded "is newly[-]discovered evidence of the [PCPO's] attempts to mislead the jury regarding . . . Johnson's involvement" in the murder. Defendant asserts although the letter is dated October 6, 2004, it was not discovered until November 2021.

In rejecting defendant's argument, the judge pointed out the letter "was nothing more than standard negotiations between the defense and the State" and did not evidence any attempt by the State "to mislead the jury in any form." Instead, "the State attempted to obtain Johnson's cooperation against those individuals it believed were the actual shooters, based on the evidence they had at that point. When Johnson refused to cooperate, the State revoked the plea offer and pursued the criminal charges against Johnson, as is routinely done."[10]

---

[10] By way of background, Johnson was originally no billed in connection with Patel's murder. After defendant's first trial, Dwight was charged with unrelated

The judge correctly concluded "defendant fail[ed] to show how the letter to Johnson's trial counsel . . . would alter the verdict if a new trial were granted."

Next, the judge considered Henry's October 4, 2021 certification submitted to support defendant's alibi claim. In the certification, Henry averred "[a]bout a week or two" before the police searched 77 Henry Street, he and defendant had "showed up at 77 Henry Street" and "saw James." He added he and James "swapped jackets."

The judge found the evidence "fail[ed] to satisfy prong[s two and three] of the Carter test for newly[-]discovered evidence." As for prong two, the judge explained

> [b]y definition, an alibi is known to a defendant because it asserts that the defendant could not have committed an offense because the defendant was nowhere near the location of the offense at the time it was committed. For the certification of . . . Henry to be believed at this juncture, this [c]ourt must also believe that defendant was fully aware that this alibi existed, and thus, could have easily obtained it prior to his trials.

---

drug offenses and provided a statement implicating Johnson as the get-away driver. Prior to defendant's second trial, the State presented the new evidence to the grand jury and Johnson was indicted. However, the State's attempt to obtain Johnson's cooperation and testimony at defendant's second trial was rebuffed. After defendant's second trial concluded, Johnson's cooperation had no value to the State, resulting in the revised plea offer. After carefully canvassing the trial record, the judge found no evidence the State had misrepresented to the jury Johnson's involvement in the murder.

25

The judge continued:

> [T]o justify his failure in obtaining this alibi prior to his trial, defendant claims that . . . Henry was unavailable because he was only [seventeen] years old on February 18, 2002, and he had his own criminal cases that he was dealing with. This argument is disingenuous at best . . . . Henry was able to testify at a pre-trial hearing during defendant's first trial. During his testimony, it was revealed that he had pending juvenile matters. . . . Therefore, there is no excusable reason for defendant to not discover this evidence prior to his trial.

As for prong three, the judge found Henry's certification "lack[ed] credibility." The judge pointed out Henry's certification "was contradicted by all witnesses who were actually at the house on 77 Henry Street on the night of February 18, 2002," all of whom "testified, at both trials, that defendant arrived with James . . . and that . . . Henry was called to the house after either . . . defendant or James . . . requested Lakina . . . to call him."[11] The judge added "the fact that the second trial contained multiple references to defendant's attempt to manipulate witnesses would have called into question whether Henry's testimony was nothing more than another attempt by defendant to manipulate witnesses on his behalf." Thus, quoting Nash, 212 N.J. at 549, the

---

[11] Notably, Henry's testimony also contradicts defendant's own testimony at the first trial. Defendant testified he had arrived with James at 77 Henry Street on the day of the shooting.

26

judge concluded, "defendant fail[ed] to show that this new evidence 'would probably change the jury's verdict if a new trial were granted.'"

Critically, Henry's certification does not definitively provide an alibi for defendant. The certification only states Henry was with defendant at 77 Henry Street "about a week or two" prior to the search, that James was present at that time, and that he and James switched jackets. Because Henry's proposed testimony was discoverable prior to trial, would be rebutted by trial testimony, and does not clearly provide defendant with an alibi, the judge did not abuse his discretion in denying the motion for a new trial based on newly-discovered evidence on this ground.

Turning to Lakina's and Sabrina's October 25, 2021 certifications recanting their trial testimony and averring they previously "testified falsely" and signed their statements under threat by the police, the judge found "defendant fail[ed] to show that the proffered testimony is probably true and the trial testimony is probably false." In the certifications, Sabrina asserted defendant and Henry entered 77 Henry Street "together" the night of the shooting, and Lakina asserted on the evening of the shooting, she walked out of her bedroom and saw defendant and Henry "sitting in the living room." According to Lakina, James was not in the house "at that time."

The judge evaluated the recantations in relation to the witnesses' initial statements to police and prior testimony at two trials and at pre-trial hearings and concluded the certifications were "not believable." The judge also considered the fact that "defendant ha[d] made previous attempts to manipulate the testimony of these witnesses." Additionally, the judge pointed out that if the certifications' contents were true and Sabrina and Lakina had been coerced into making false statements, they would have come forward earlier instead of waiting almost twenty years. The judge concluded "[b]ased on the totality of the circumstances," "defendant cannot show that this alleged newly[-]discovered evidence would change the outcome of the verdict if a new trial were granted."

"[T]he sincerity of a recantation is to be viewed with 'extreme suspicion'" "[p]artly because recantations are often induced by duress or coercion." State v. Hogan, 144 N.J. 216, 239 (1996) (quoting United States v. Santiago, 837 F.2d 1545, 1550 (11th Cir. 1988)). If a PCR judge finds the recantations "unbelievable" while setting forth specific factors informing that decision, we defer to that determination. Carter, 69 N.J. at 427-28; see Ways, 180 N.J. at 196-97, 199 (deferring to the PCR court's adverse credibility findings of recanting witnesses before remanding for a new trial based only on other newly-discovered evidence).

Here, we conclude the judge's ruling was supported by the record. Even if Sabrina and Lakina recanted, the recantations would not "shake the very foundation of the State's case" but would merely serve to contradict other testimony. Ways, 180 N.J. at 189. Sabrina's and Lakina's testimony was not the only evidence placing defendant and James together immediately after the shooting. Lee's and Anjelicia's consistent testimony that defendant arrived at 77 Henry Street with James on the evening of the shooting supported the verdict. Because Sabrina's and Lakina's recantations would not have altered the jury's verdict, the judge correctly denied defendant's motion for a new trial based on newly-discovered evidence.

## B. PCR

Defendant's remaining claims for PCR are time-barred and procedurally barred.

Pursuant to Rule 3:22-4(b), "[a] second or subsequent petition for [PCR] shall be dismissed unless . . . it is timely under R[ule] 3:22-12(a)(2)." Rule 3:22-12(a)(2) provides:

> [N]o second or subsequent petition [for PCR] shall be filed more than one year after the latest of:
>
> A. the date on which the constitutional right asserted was initially recognized by the United States Supreme Court or the

29

Supreme Court of New Jersey . . . ; or

B. the date on which the factual predicate for the relief sought was discovered, if that factual predicate could not have been discovered earlier through the exercise of reasonable diligence; or

C. the date of the denial of the first or subsequent application for [PCR] where ineffective assistance of counsel that represented the defendant on the first or subsequent application for [PCR] is being alleged.

"[P]ost-conviction proceedings are not a substitute for direct appeal." State v. Mitchell, 126 N.J. 565, 583 (1992) (quoting State v. Cerbo, 78 N.J. 595, 605 (1979)). In Cerbo, our Supreme Court justified its denial of PCR "despite trial errors based on '[o]ther countervailing reasons, firmly founded in the efficient and fair administration of justice.'" Mitchell, 126 N.J. at 584 (alteration in original) (quoting Cerbo, 78 N.J. at 604-05).

To be sure,

> [t]he State has a strong interest in achieving finality. Without procedural rules requiring the consolidation of issues, litigation would continue indefinitely in a disconnected and piecemeal fashion. Each time a petitioner brought forward a new issue, attorneys and courts would waste their limited resources acquainting themselves with all of the complex details necessary to adjudicate it. When the grounds for challenging a conviction are consolidated, that investment need occur

only once, and judicial resources can be more efficiently used to decide cases in a timely fashion. Moreover, relevant issues in a case are often interrelated. Adjudicating them separately would impair a court's ability to reach a result that fairly synthesizes all of the relevant factors into a just and reasoned outcome.

[Ibid.]

This is defendant's third PCR petition, filed in 2022 and rehashing issues previously decided since his 2004 convictions. This petition is only timely if the factual predicate underlying the claim was discovered within one year of the petition and "could not have been discovered earlier through the exercise of reasonable diligence." R. 3:22-12(a)(2)(B). Defendant does not claim that subsections (A) or (C) applies to him.

Defendant alleged ineffective assistance of trial and appellate counsel. According to defendant, trial counsel was ineffective by failing to call Byrd, defendant's friend, who observed defendant in possession of a .22 and a .38 caliber handgun, not a .45 caliber like the murder weapon; failing to call Henry as an alibi witness; and failing to admit James's pretrial statement. Defendant further asserted appellate counsel was ineffective by failing to argue the trial court admitted "irrelevant and highly prejudicial evidence" during the second trial, namely, "the[] guns and drugs" found in the Wilson home.

31

Additionally, defendant claims he was entitled to a missing witness charge pursuant to State v. Clawans, 38 N.J. 162 (1962), because the State did not force Johnson to testify. Defendant also asserts prosecutorial misconduct, alleging the prosecutor's summation falsely denied "there was any credible evidence that [Johnson] . . . was involved in the crime," and "misrepresented . . . communications between [defendant] and Sha[h]queena."

None of defendant's claims satisfy the standard for overcoming the time bar. As the judge found, defendant "was well aware that the testimony of . . . Byrd existed, even prior to his second trial, as Byrd was called as a witness during defendant's first trial." Likewise, as the judge recounted, Henry testified at a pre-trial hearing during defendant's first trial. As to the IAC claim involving appellate counsel, the trial concluded in 2004 and the claim could have been raised in defendant's first PCR petition.

Defendant's IAC claim pertaining to the admission of James's pretrial statement is also barred by Rule 3:22-5, which provides "[a] prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to this rule . . . or in any appeal taken from such proceedings."

A-3093-23

The claim was exhaustively addressed in defendant's first PCR petition, the denial of which was affirmed by this court. Walker III, slip op. at 10.

Regarding Johnson, he pled guilty in 2006 after defendant's second trial and received a three-year NERA sentence. As the judge noted, prior to 2006, "Johnson had a constitutional right to remain silent, thus[] prohibiting the State from calling him as a witness." As to defendant's prosecutorial misconduct claims, the purported factual predicates arose during defendant's second trial and should have been raised in defendant's direct appeal.

"[E]nlargement of Rule 3:22-12's time limits 'is absolutely prohibited.'" State v. Jackson, 454 N.J. Super. 284, 292 (App. Div. 2018) (quoting Aujero v. Cirelli, 110 N.J. 566, 577 (1988)). Defendant's claim of actual innocence to overcome these procedural hurdles is unavailing. In State v. Marolda, 471 N.J. Super. 49, 64-65 (App. Div. 2022) (omission in original), we rejected such a claim, explaining:

> Under United States Supreme Court doctrine, a federal habeas corpus petitioner is allowed, upon "a convincing showing of actual innocence . . . to overcome a procedural bar to consideration of the merits of their constitutional claims." McQuiggin v. Perkins, 569 U.S. 383, 386 (2013) (applying the doctrine to the one-year statute of limitations governing first habeas petitions). In order to proceed on a claim of actual innocence, a defendant must first present (1) new, reliable evidence and (2) show by a preponderance

33

of the evidence that, given this new evidence, "it is more likely than not that no reasonable juror would have convicted him [or her] in light of the new evidence." Schlup v. Delo, 513 U.S. 298, 327 (1995); accord McQuiggin, 569 U.S. at 399.

However, the doctrine is not constitutionally required; it "is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." McQuiggin, 569 U.S. at 392 (quoting Herrera v. Collins, 506 U.S. 390, 404 (1993)). It permits a federal court to consider claims even though a state court has procedurally barred them. Id. at 394. We are aware of no authority—and [the] defendant cites none — for us to apply this federal equitable doctrine to override the clear mandate of Rule 3:22-12. Moreover, Rule 1:3-4(c) prohibits a trial court from enlarging the time limits specified in Rule 3:22-12.

Here, we similarly conclude the procedural bar is insurmountable.

To the extent we have not addressed a particular argument, it is because either our disposition makes it unnecessary or the argument was without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

34

A-3093-23